Joseph Alm (SBN: 294362)
jalm@tesla.com
Candace Jackman (SBN: 267599)
cjackman@tesla.com
**TESLA, INC.**
901 Page Ave.
Fremont, CA 94538
(650) 681-5000

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT FOR

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **TESLA, INC.**, <br><br> Plaintiff, <br><br> v. <br><br> **MCKECHNIE VEHICLE COMPONENTS USA, INC.**; and **MVCUSA HOLDINGS, LLC**, <br><br> Defendant. | Case Number: 5:21-cv-01962 <br><br> **COMPLAINT** |

Plaintiff Tesla, Inc. brings the following causes of action against McKechnie Vehicle Components USA, Inc. and MVCUSA Holdings, LLC, alleging as follows:

**PARTIES**

1.   Plaintiff Tesla, Inc. ("Tesla"), is a Delaware corporation with its principal place of business in Palo Alto, California. Tesla designs, builds, and services electric cars, batteries, solar panels, and other products designed to accelerate the world's transition to renewable energy.

1

Complaint

2. Defendant McKechnie Vehicle Components USA, Inc., is a Michigan corporation with its principal place of business in Roseville, Michigan. MVC manufactures vehicles components for vehicle manufacturers.

3. Defendant MVCUSA Holdings, LLC is a Michigan corporation with its principal place of business in Roseville, Michigan. MVCUSA Holdings, LLC, owns and operates McKechnie Vehicle Components USA, Inc.

4. This Complaint refers to Defendants McKechnie Vehicle Components USA, Inc., and MVCUSA Holdings, LLC, collectively as "MVC."

## JURISDICTION AND VENUE

5. This action arises under California law. Plaintiff asserts that Defendant has breached its contract with Plaintiff, converted Plaintiff's property, and trespassed upon Plaintiff's chattels. The contract in question provides that disputes shall be resolved in the state court in Santa Clara County, California, or in the federal courts of the Northern District of California. The parties in this case are diverse, and the amount in controversy exceeds $75,000. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332.

6. Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. The contract in question was negotiated and signed by Tesla in this venue and the tooling and parts purchased by Tesla pursuant to the contract are to be billed to Tesla's facility in this venue. The parties have also waived any objection to venue in this Court.

7. Plaintiff's claims for injunctive relief are authorized by Federal Rule of Civil Procedure 65 and by the general and equitable powers of this Court.

## FACTUAL ALLEGATIONS

**I. TESLA AND MVC SIGN GENERAL TERMS AND CONDITIONS FOR THE PRODUCTION OF PARTS FOR TESLA VEHICLES**

8. On December 18, 2014, Tesla and MVC entered into General Terms and Conditions for Prototype and Production Parts or Services ("GTC"). Under the GTC, MVC is to use custom molds and tooling to manufacture parts used in the production and servicing of certain Tesla vehicles. For

the most part, these parts are injection-molded plastic components with chrome plating. These parts add both cosmetic and functional value to Tesla's vehicles.

9. The parts produced under the GTC are manufactured specifically for Tesla vehicles using tooling at MVC's manufacturing facilities. The tooling that MVC uses to manufacture these parts was also developed specifically for Tesla vehicles. Neither these parts nor the tooling used to create them is obtainable on the open market. Likewise, there are no substitutes for these parts or the tooling used to create them.

10. Besides being custom-built for Tesla, the tooling used to manufacture parts under the GTC is extremely complex and substantial. The tooling in question weighs literally tons. Moving this tooling to new facilities is burdensome; trying to construct it from scratch is even more so.

11. The parts produced to be produced under the GTC are required for Tesla to service certain Tesla vehicles.

12. Because of the importance to Tesla of timely and reliable shipments of these parts, Tesla negotiated for specific provisions in the GTC to protect its rights, including the ability to seek injunctive relief and/or enter MVC's facilities to take possession of Tesla's property.

## II. MVC BREACHES THE GENERAL TERMS AND CONDITIONS AND ATTEMPTS TO EXTORT TESLA

### A. MVC Begins Sending Incomplete and Untimely Shipments

13. MVC breached the GTC at least as early as March 29, 2019, when it refused to deliver product to Tesla when Tesla's trucks arrived at MVC's facilities. MVC concurrently halted additional deliveries to Tesla. At this time, MVC demanded that Tesla make concessions—including buying product it didn't want, changing payment terms, and paying more—to receive any additional product from MVC. Tesla protested, but ultimately provided a substantial loan to MVC. This loan came due at the end of the second quarter of 2020, but MVC never paid it and remains in breach of both the GTC and the loan agreement.

14. In July 2020, MVC began delaying regular shipments. These delays threatened Tesla's ability to meet demand for its vehicles and to service its vehicles on multiple occasions. These delays continued until February 16, 2021.

### B. MVC Issues an Extortion Threat and Refuses Outright to Operate Under the General Terms and Conditions

15. On February 16, 2021, MVC refused to produce *any* more goods under the GTC unless Tesla agreed to sign an "accommodation agreement." This agreement would have required Tesla to make additional payments and concessions. That same day, Matt Kazin, an outside consultant for MVC, communicated that MVC had reached an accommodation agreement with its other customers, which agreement would "preclude[] [MVC] from continuing to manufacture components for large nonparticipating customers," including Tesla.

16. Recalling MVC's prior bait-and-switch in demanding concessions in 2019, Tesla decided it would not indulge MVC's extortion attempt. Thus, on February 26, 2019, Tesla informed MVC it would possess its tooling from MVC's facilities on March 5, 2021, and that in the meantime, it would need to audit its tooling.

17. The same day, Matt Kazin refused Tesla's audit and claim to possession of its tooling unless Tesla waived its contractual right to setoff and paid millions to MVC.

18. The only purported basis for this were time-barred claims that MVC had previously released in exchange for the 2019 loan from Tesla. Notably, MVC did not assert (and could not have asserted) that Tesla breached the GTC.

19. The GTC provides that Tesla owns any property for which it has paid in full and that Tesla may recover such property at any time.

20. Tesla has paid in full for the tooling Tesla seeks to possess by this action.

21. Tesla has not breached the GTC in any way.

22. MVC remains in breach of both the GTC and the 2019 loan agreement. It remains in illegal possession of Tesla's property for which Tesla indisputably has paid in full, but which MVC refuses to permit Tesla to repossess.

### CLAIMS

### Count One: Conversion

23. Tesla hereby incorporates by reference all preceding paragraphs.

24. As alleged above, in February 2021, MVC attempted to extort money and other

4

Complaint

1  concessions from Tesla before it would allow Tesla to possess its property from MVC.

2  25.  Tesla has paid in full for the property sought by this action. Under the GTC, this Tesla owns the tooling now possessed by MVC, and the GTC provides Tesla the right to repossess that tooling at any time, for any or no reason, without any additional payment.

26.  MVC refused and continues to refuse to permit Tesla to repossess Tesla's tooling. In addition to refusing to return Tesla's tooling, MVC has prevented Tesla from accessing Tesla's tooling as well. That tooling remains at MVC facilities.

27.  Tesla has not consented to MVC's wrongful retention of Tesla's tooling.

28.  Tesla has faced substantial harm from MVC's refusal to return Tesla's tooling. If MVC is permitted to retain Tesla's property, Tesla will face additional harms from increased production and servicing costs and tarnished goodwill if Tesla is unable to provide timely and adequate services to its customers, for whom no alternative to Tesla is available for certain purchases and services.

29.  The parts manufactured by MVC are specifically designed for Tesla's vehicles using custom-designed tooling, and it is impossible for Tesla to cover for these parts and tooling in the marketplace.

30.  Each day that goes by during which MVC remains in illegal possession of Tesla's property, the harm imposed on Tesla and its customers grows.

**Count Two: Trespass to Chattels**

31.  Tesla hereby incorporates by reference all preceding paragraphs.

32.  As alleged above, in February 2021, MVC attempted to extort money and other concessions from Tesla before it would allow Tesla to possess its property from MVC.

33.  Tesla has paid in full for the property sought by this action. Under the GTC, this Tesla owns the tooling now possessed by MVC, and the GTC provides Tesla the right to repossess that tooling at any time, for any or no reason, without any additional payment.

34.  MVC refused and continues to refuse to permit Tesla to repossess Tesla's tooling. In addition to refusing to return Tesla's tooling, MVC has prevented Tesla from accessing Tesla's tooling as well. That tooling remains at MVC's facilities.

Complaint

35. Tesla has not consented to MVC's wrongful retention of Tesla's tooling.

36. Tesla has faced substantial harm from MVC's refusal to return Tesla's tooling. If MVC is permitted to retain Tesla's property, Tesla will face additional harms from increased production and servicing costs and tarnished goodwill if Tesla is unable to provide timely and adequate services to its customers, for whom no alternative to Tesla is available for certain purchases and services.

37. The parts manufactured by MVC are specifically designed for Tesla's vehicles using custom-designed tooling, and it is impossible for Tesla to cover for these parts and tooling in the marketplace.

38. Each day that goes by during which MVC remains in illegal possession of Tesla's property, the harm imposed on Tesla and its customers grows.

### Count Three: Breach of Contract (GTC)

39. Tesla hereby incorporates by reference all preceding paragraphs.

40. As alleged above, Tesla and MVC entered into the GTC under which MVC would produce certain tooling and parts for Tesla's vehicles.

41. As alleged above, MVC has breached the GTC on numerous occasions, first by providing untimely or incomplete shipments to Tesla, and later by refusing delivery outright.

42. As alleged above, MVC remains in breach of the GTC, refusing to perform unless Tesla gives in to MVC's extortionate demands to pay sums not required by the GTC and waive rights afforded to Tesla under the GTC.

43. Unlike MVC, Tesla has performed all of its duties under the GTC.

44. Tesla has already suffered, and continues to suffer, substantial harm as a direct and proximate consequence of MVC's breach. Tesla relies on MVC to timely deliver product to Tesla under the GTC, which MVC has refused to do.

45. MVC has also breached the GTC by refusing to permit Tesla to audit MVC's facilities.

46. MVC has also breached the GTC by refusing to release Tesla's property to Tesla, even though MVC does not even dispute that Tesla has paid in full for such property.

47. MVC has also breached the GTC by prioritizing other production over producing

6

Complaint

Tesla's parts.

48. The parts manufactured by MVC are specifically designed for Tesla's vehicles using custom-designed tooling, and it is impossible for Tesla to effect cover for these parts and tooling in the marketplace.

49. Each day that goes by during which MVC remains in illegal possession of Tesla's property, the harm imposed on Tesla and its customers grows.

50. The GTC provides for damages, including consequential damages and equitable relief in the event of MVC's breach.

### Count Four: Breach of Contract (Loan Agreement)

51. Tesla hereby incorporates by reference all preceding paragraphs.

52. As alleged above, after breaching the GTC in March 2019, MVC demanded that Tesla provide MVC certain concessions to receive the parts Tesla was owed under the GTC, in consequence of which Tesla extended a substantial loan to MVC.

53. As alleged above, MVC has not paid that loan, although it came due after the second quarter of 2020.  MVC has not cured its breach of the loan agreement.

54. Tesla therefore has suffered damages in the amount of the loan, exclusive of interest running from the loan repayment date to the date on which MVC actually tenders payment.

### PRAYER FOR RELIEF

WHEREFORE, Tesla respectfully request that this Court enter judgment against Defendants as follows:

1. For compensatory damages in an amount to be proved;
2. For prejudgment interest from the loan repayment date to the date of entry of judgment;
3. For a declaration that the GTC is valid and enforceable, and that the GTC entitles Tesla to possess the property for which it has paid in full;
4. For a temporary restraining order and preliminary and permanent injunctions ordering Defendants to make their facilities at MVC Newberry, 12117 C.R. Koon Highway (Hwy. 76), Newberry, South Carolina 29108 and MVC Nicholasville, 801 John C. Watts Drive,

Nicholasville, Kentucky 40356 available to Tesla and Tesla's officers, agents, servants, employees, and attorneys for Tesla to possess its property;

5. For reasonable attorneys' fees and costs of suit;
6. For such other and further relief as the Court may deem proper.

Date: March 19, 2021

By:  /s/ *Joseph Alm*

Joseph Alm (SBN: 294362)
jalm@tesla.com
Candace Jackman (SBN: 267599)
cjackman@tesla.com
TESLA, INC.
901 Page Ave.
Fremont, CA 94538
(650) 681-5000

*Counsel for Plaintiff*
Tesla, Inc.

Complaint